JL

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ryan William Welch, | No. CV 20-08107-PCT-DGC (MHB) |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Maxson, et al., | |
| Defendants. | |

On May 7, 2020, Plaintiff Ryan William Welch, who is confined in the Yavapai County Detention Center, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and a Motion for Immediate Relief. In a May 22, 2020 Order, the Court denied the Motion for Immediate Relief and gave Plaintiff 30 days to pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis.

On June 8, 2020, Plaintiff filed an Application to Proceed In Forma Pauperis. In a June 15, 2020 Order, the Court granted the Application and dismissed the Complaint because Plaintiff failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On June 15, 2020, Plaintiff filed a Motion to Appoint Counsel (Doc. 9). On June 29, 2020, Plaintiff filed a First Amended Complaint (Doc. 10). The Court will order Defendants Maxson, Morga, Lara, Snyder, and Cote to answer the excessive force claim in Count One of the First Amended Complaint; order Defendants McKinney, Byers, and

Sampson to answer the due process claims in Count Three; order Defendant Sampson to answer the conditions-of-confinement claim in Count Three; and dismiss Count Two and Defendants Napper and Bailey without prejudice. The Court will deny the motion to appoint counsel.

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342

(9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.     First Amended Complaint**

In his First Amended Complaint, Plaintiff sues Judge John Napper, Sergeants Maxson and Sampson, and Detention Officers Morga, Lara, Snyder, Cote, McKinney, Byers, and Bailey. Plaintiff asserts claims of excessive force, unlawful detention, and denial of due process in disciplinary proceedings. He seeks monetary and injunctive relief.

In **Count One**, Plaintiff alleges that at 11:00 p.m. on April 28, 2020, Defendants Maxson and Morga were "in the bubble" for security and left the dorm lights on, although jail rules specifically state that detainees are entitled to six hours of uninterrupted sleep from 10:00 p.m. to 4:00 a.m. Plaintiff asserts that he told "them" to turn off the lights, but they refused. Plaintiff yelled, "turn the fuxxing [sic] lights off," but "they" thought it was funny to "mess with" Plaintiff on the speaker and not turn off the lights. Plaintiff and his cellmate were "calling them retards." Defendants Maxson and Morga then sent officers to Plaintiff's cell to extract him, although Plaintiff was already locked down in his cell in solitary confinement 23 and a half hours per day. Plaintiff claims there was no reason for the officers to enter his cell "just because they [did not his] language." Plaintiff alleges he was not being violent; he "just wanted the lights off and said some cuss words." Plaintiff asserts there was no headcount being conducted and he did not break any rules. He claims "they" simply wanted to hurt him to teach him a lesson.

Plaintiff alleges that Defendants Snyder, Cote, and Lara were also "involved," and there are more officers whom Plaintiff cannot name. Plaintiff asserts that "they" came to his cell and told him to cuff up by putting his hands through the "bean shoot" in the cell door. Plaintiff asked them, "for what?" Plaintiff was told that if he did not comply, they would force him. Plaintiff put his hands through the bean shoot, and "they" placed handcuffs on him so tightly that the cuffs cut his wrists. "They" twisted Plaintiff's wrists behind his back, and he yelled out in pain. "They" opened the cell door and slammed

Plaintiff into the metal doorjamb, fracturing his left collarbone. Plaintiff said, "ow[]! really loud," and "they" again slammed him into the wall and twisted his wrists behind him. Plaintiff and the officers walked to the stairs, and the officers, who were all behind Plaintiff, tried to trip him. Plaintiff "lifted [his] legs" and when he was almost to the bottom of the stairs, he was tripped from behind and twisted his ankle. Someone landed on top of Plaintiff, and Plaintiff felt his wrist "pop." He yelled out in pain again, and "they" lifted him. Plaintiff's knuckles on his right hand were bleeding, and he "kept saying" he was bleeding and, "that hurts." "They" twisted Plaintiff's arms behind him and moved him to the other side of the jail "for no reason."

"They" then moved Plaintiff into the quarantine cells, which are used for detainees to be screened for COVID-19 when they enter the jail, thereby putting Plaintiff at risk of contracting the virus. They threw Plaintiff on the floor in the cell and "all were on top of [him]." Plaintiff said, "Get off!" and they told him to stop resisting. Plaintiff alleges that Defendant Maxson "stood there and smiled" as the officers, who were all taller and heavier than Plaintiff, were "roughing [Plaintiff] up." Plaintiff contends the other officers are "just as guilty for going along with it." Defendant Maxson sanctioned Plaintiff to seven days on lockdown and seven days loss of privileges, although Plaintiff was already locked down. A nurse put a bandage on the knuckles of Plaintiff's right hand. The knuckles were "out of place," swollen, and numb. Plaintiff refused to have his other injuries examined, and he has scars.

Plaintiff alleges he submitted a grievance immediately after this incident while he was appealing his unlawful detention in administrative segregation because the charges "are false and fabricated." Plaintiff asserts non-party Captain Newman denied all his appeals at the highest level and that it took a month for the appeal to be addressed.

Plaintiff alleges that he suffered a fractured left clavicle, bruises on his arms, shoulders, and wrists, cuts on his wrists from tight handcuffs, swollen wrists, cuts on his knuckles, a twisted ankle, and psychological damage.

In **Count Two**, Plaintiff alleges that Defendant Napper imposed an excessive $25,000 cash bond in Plaintiff's criminal proceeding, in violation of Article II, section 15 of the United States and Arizona Constitutions and the Eighth Amendment. Plaintiff contends that judicial immunity does not bar prospective injunctive relief against a judge who imposes bail on individuals who are charged with "non-jailable" offenses. Plaintiff claims he is charged for offenses that are not violent, repetitive, drug-related, sexual, or dangerous. Plaintiff is not a convicted felon; he has no prior convictions at all. Plaintiff asserts he is not a flight risk because he lives, works, and attends college in Yavapai County, and he has lived in Arizona his entire life. Plaintiff contends there is "no reason in good faith" to hold him in jail for 15 months on an excessive bail. Plaintiff alleges that he has lost his life, liberty, and freedom, and "[his] conscience has been shocked" by his unnecessary pretrial incarceration and unlawful detention.

In **Count Three**, Plaintiff alleges that on November 4, 2019, Defendant Morga claimed Plaintiff had ripped his socks. There was already a hole in the sock; Plaintiff "just made it bigger" because he "simply wanted decent socks" to wear to court. Plaintiff was told to pack his belongings to be moved. Plaintiff asked, "to where?" "They" just "kept repeating it." Plaintiff was not given a reason for being moved. Instead, Defendants Bailey and Morga handcuffed Plaintiff and threw him into a wall. Plaintiff hit his head when they handcuffed him and hit his head again on the door as they were leaving. Plaintiff was told he would be sanctioned to 14 days on lockdown. Plaintiff claims he was not provided a fair hearing and was not permitted to exercise his right to remain silent. Plaintiff was moved into lockdown, and the next day, on November 5, 2019, Defendant Byers told Plaintiff he was "making [Plaintiff] permanent ADSEG." Defendant Byers moved Plaintiff to solitary confinement, where Plaintiff remained until April 28, 2020, when Defendant Maxson removed him.

Plaintiff alleges that on January 12, 2020, his recreation time "was being cut short" although he still had five of 30 minutes left of his permitted recreation time. Plaintiff took a shower, and Defendant McKinney told Plaintiff that his time was up. Plaintiff told

**TERMPSREF**

McKinney that he had kept track of time, took a shower in three minutes, then hurried to get back to his cell. Plaintiff was locked out of his cell and was accused of refusing to lock down. Plaintiff claims these allegations were false and he was not given a fair hearing or permitted to exercise his right to remain silent. Plaintiff alleges that Defendant Sampson "made" Defendant McKinney write Plaintiff up. Defendant Sampson sanctioned Plaintiff to 30 days of 72-hour lockdown with one hour out. Plaintiff appealed this decision, but at the highest level – Captain Newman – denied the appeal.

Plaintiff attaches to his First Amended Complaint copies of documents relating to his disciplinary proceedings. On November 4, 2019, Plaintiff was charged with failure to follow staff's orders, insolence toward staff, mutilating or altering county-issued clothing or property, and "conduct which disrupts." The supporting facts state that during clothing exchange, Plaintiff mutilated clothing by tearing apart socks in Defendant Morgan's presence. After being instructed to gather his belongings, Plaintiff refused to comply. The dorm was locked down, and Plaintiff continued to verbally refuse orders from staff. Plaintiff was placed in restraints and removed from the dorm.

On January 12, 2020, Plaintiff was charged with refusing to obey a staff member's orders and failure to follow staff orders. The supporting facts stated that Plaintiff had "repeatedly locked down late and refuse[d] to listen to staff orders." The facts stated that Defendant McKinney asked Plaintiff to lock down, and Plaintiff refused and started to take a shower. Several minutes passed as McKinney repeatedly instructed Plaintiff to lock down, and Plaintiff "continually refused."

On April 28, 2020, Plaintiff was charged with insolence toward staff and failure to follow staff members' orders. The supporting facts state that while conducting headcounts, Plaintiff "engag[ed] in disruptive behavior," used profanity toward staff, and used derogatory comments in regard to the rules of the facility.

Plaintiff also alleges in Count Three that between November 4, 2019 and April 28, 2020, Defendant Sampson did not allow Plaintiff to go outside. Plaintiff asked on the 10th and 25th of each month if he could have recreation time in the yard, but he was never

allowed. Plaintiff also requested recreation time on June 24, 2020, which was denied. Plaintiff asserts that he was last allowed outside in August 2019, when he was in general population, but since then he has not been permitted outside recreation time.

### III. Failure to State a Claim

#### A. Defendant Napper

Judges are absolutely immune from § 1983 suits for damages for their judicial acts, except when they are taken "in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). An act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his or her judicial capacity. *Stump*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990). This immunity attaches even if the judge is accused of acting maliciously and corruptly, *Pierson v. Ray*, 386 U.S. 547, 554 (1967), or of making grave errors of law or procedure, *see Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988).

Plaintiff's allegations against Defendant Napper pertain only to Napper's imposition of a cash bond in Plaintiff's criminal proceeding. Despite Plaintiff's assertions to the contrary, Defendant Napper is absolutely immune for such acts.

Furthermore, the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court in most circumstances from directly interfering with ongoing criminal proceedings in state court and applies while the case works its way through the state appellate process. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) ("[f]or *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system"); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial."). "[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the

state courts." *Drury v. Cox,* 457 F.2d 764, 764-65 (9th Cir. 1972) (per curiam). Special circumstances occur "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." *Carden v. Montana*, 626 F.2d 82, 84 (9th Cir. 1980) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)).

Plaintiff has failed to show special or extraordinary circumstances to support that he will suffer irreparable harm if this Court abstains from hearing his claims until after he has a chance to present them to the state courts. *See Younger*, 401 U.S. at 45-46; *Carden*, 626 F.2d at 83-84. Thus, the Court will abstain from interfering in Plaintiff's ongoing state-court criminal proceedings with respect to bail. These issues should be raised in his criminal case, not here. *See, e.g., Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir. 1986) (per curiam) (abstention appropriate in § 1983 action for denial of Sixth Amendment right to counsel; plaintiff can adequately litigate his claim in ongoing state criminal proceedings and the potential for federal-state friction is obvious). The Court will dismiss Defendant Napper and Count Two.

### B.     Defendant Bailey

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a

civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

Plaintiff's only specific allegation against Defendant Bailey is that on November 4, 2019, Bailey, along with Defendant Morga, handcuffed Plaintiff and threw him into a wall after Plaintiff asked where he was being moved. This bare allegation is insufficient to support a conclusion that Bailey's conduct resulted in any injury to Plaintiff. The Court will therefore dismiss Defendant Bailey.

**IV.    Claims for Which an Answer Will be Required**

In Count One, Plaintiff alleges that Defendants Maxson and Morga ordered officers to physically extract Plaintiff from his cell because he used profanity and questioned their failure to turn off the lights, and that Defendants Snyder, Cote, and Lara forcibly handcuffed Plaintiff, twisted his wrists, slammed him into a metal doorjamb and a wall, tripped him while he was walking down a flight of stairs, and tackled him in a quarantine cell. Liberally construed, Plaintiff has stated a Fourteenth Amendment excessive force claim against Defendants Maxson, Morga, Snyder, Cote, and Lara in their individual capacities. The Court will require these Defendants to answer Count One.

In Count Three, Plaintiff alleges that on three occasions, he was found guilty of disciplinary violations and sanctioned without a hearing or an opportunity to present evidence or question witnesses. Liberally construed, Plaintiff has stated a Fourteenth Amendment due process claim against Defendants Byers, McKinney, and Sampson in their individual capacities. The Court will require these Defendants to answer the due process claims in Count Three.

Plaintiff also alleges in Count Three that he requested recreation time on the 10th and 25th of every month between November 2019 and April 2020, and each time, Defendant Sampson denied his request. Liberally construed, Plaintiff has stated a Fourteenth Amendment conditions-of-confinement claim against Defendant Sampson in his individual capacity. The Court will require this Defendant to answer the conditions-of-confinement claim in Count Three.

**V.     Motion to Appoint Counsel**

In his Motion to Appoint Counsel, Plaintiff asks the Court to appoint counsel to represent him in this case because he has suffered bodily harm by his jailers, has been denied due process of law, has been made financially indigent, and is in unnecessary pretrial incarceration. Plaintiff asserts this case is complex and will require subpoenas and extensive research.

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff is in no different position than many pro se prisoner litigants. Thus, the Court will deny without prejudice Plaintiff's Motion to Appoint Counsel.

**VI.    Warnings**

   **A.     Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Motion to Appoint Counsel (Doc. 9) is **denied**.

(2) Count Two is **dismissed** without prejudice.

(3) Defendants Napper and Bailey are **dismissed** without prejudice.

(4) Defendants Maxson, Morga, Snyder, Cote, and Lara in their individual capacities must answer the excessive force claim in Count One. Defendants Byers, McKinney, and Sampson in their individual capacities must answer the due process claims in Count Three. Defendant Sampson in his individual capacity must answer the conditions-of-confinement claim in Count Three.

(5) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 10), this Order, and both summons and request for waiver

TERMPSREF

forms for Defendants Maxson, Morga, Snyder, Cote, Lara, Byers, McKinney, and Sampson.

(6) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(8) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(10) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(11) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(12) Defendants Maxson, Morga, Snyder, Cote, Lara, Byers, McKinney, and Sampson must answer the relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(14) This matter is referred to Magistrate Judge Michelle H. Burns pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 7th day of July, 2020.

*David G. Campbell*
David G. Campbell
Senior United States District Judge

TERMPSREF